UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIZA NORIEGA,<br><br>            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>            Defendant. | **Case No. 1:14-cv-00741-GSA**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

I. **INTRODUCTION**

Plaintiff Liza Noriega ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income ("SSI") benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

II. **BACKGROUND AND PRIOR PROCEEDINGS**[2]

Plaintiff was 36 years old at the time of her hearing before the Social Security Administration. AR 41. She graduated from high school and completed two years of vocational

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 7, 8.)
[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

training as a certified nursing assistant. AR 42, 62. Plaintiff most recently worked for an auto parts dealer as a delivery driver in 2011 and also has experience working as a dog groomer. AR 185. Plaintiff has one child who lives with her. AR 41.

Plaintiff's alleged physical conditions include fibromyalgia, arthritis, obesity, high blood pressure, and Krohn's disease. AR 167. She also alleges depression. *Id*. On August 24, 2011, Plaintiff filed an application for disability insurance benefits under Title XVI. AR 151-159. This application was denied initially on February 27, 2012 and on reconsideration on June 15, 2012. AR 91-95, 99-105. Plaintiff filed a request for a hearing on June 27, 2012. AR 106-108. The hearing was then conducted before Administrative Law Judge Raymond L. Souza (the "ALJ") on January 8, 2013. AR 22. On January 23, 2013, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled. AR 22-33. Plaintiff filed an appeal of this decision with the Appeals Council. The Appeals Council denied her appeal, rendering the order the final decision of the Commissioner. AR 1-6.

Plaintiff now challenges that decision, arguing that: (1) The ALJ erroneously found Plaintiff's testimony not credible because of purported inconsistencies in her testimony; and (2) the ALJ failed to provide specific and legitimate reasons to reject the opinion of Sylvia Torrez, Psy.D., when he declined to adopt a line from Dr. Torrez's consultative examination report. Defendant disagrees, pointing out that: (1) The ALJ pointed to at least five distinct valid reasons to discredit Plaintiff's testimony; and (2) the ALJ accorded appropriate weight to Dr. Torrez's opinion and incorporated it into his RFC determination.

**III.    THE DISABILITY DETERMINATION PROCESS**

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[3] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[4] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 22-30. In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 24, 2011, the date specified in her application. AR 24. Further, the ALJ identified fibromyalgia, degenerative disc disease of the cervical, thoracic, and lumbar spine, irritable bowel syndrome, and a history of polysubstance abuse as medically determinable impairments. AR 24. Nonetheless, the ALJ determined at step two of the five-step process that Plaintiff did not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in

---

[3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c).

[4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

20 CFR Part 404, Subpart B, Appendix 1. AR 24.

Based on a review of the entire record, the ALJ thus determined that Plaintiff had the RFC to "perform light work as defined in 20 CFR 416.967(b), but she can never climb ladders, ropes, or scaffolds. She can stoop, crouch, kneel, crawl, and climb ramps and stairs occasionally. She must avoid all use of hazardous (defined as moving and unshielded) machinery and all exposure to unprotected heights. She is limited to simple (defined in the Dictionary of Occupational Titles as SVP levels 1 and 2), routine, and repetitive tasks because her concentration is compromised by pain and side effects from her medications." AR 25. Plaintiff was thus able to perform her past relevant work as a dog bather, which did not require any activities precluded by her RFC. AR 29. Alternatively, the ALJ also determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including office help, cashier, and storage rental clerk. AR 30.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## V. DISCUSSION

### A. The Relevant Medical Evidence

Plaintiff argues that the ALJ improperly considered the medical evidence, as well as Plaintiff's own testimony, and thus erroneously determined that Plaintiff was not disabled. Specifically at issue is the ALJ's consideration of: (1) the opinion of Silvia Torrez, Psy.D., a consulting examiner; and (2) Plaintiff's testimony to the ALJ. The following review of the

4

medical record is limited to the issues of Dr. Torrez's opinion and Plaintiff's credibility.

### i. Sylvia Torrez, Psy.D.

Dr. Torrez was a consulting examiner who examined Plaintiff on January 9, 2012. AR 367. Plaintiff told Dr. Torrez that "I have a whole bunch of things wrong with me; depression, anxiety, panic, fibromyalgia, arthritis, high blood pressure." AR 367. As a result of these diagnoses, she complained that her daily level of pain was 9 out of 10. AR 368. She also explained that she had first been diagnosed with depression four years ago and had been taking medication, but then stopped. AR 368. She also told Dr. Torrez that her sleep was normal. AR 369. She also reported that between 1995 and 2000, she had problems with alcohol and methamphetamine abuse. AR 370.

With respect to her social and educational history, Plaintiff told Dr. Torrez that she had never been in special education and currently lived with her son and mother. AR 370. She also explained that she had frequently had her employment terminated by various employers, including McDonald's, Burger King, Star Beauty Supplies, and Zales, for poor performance and issues with tardiness. AR 371. She further explained that co-workers often complained about her because "I don't carry my own weight and rely on other people to do [my] job." AR 371.

Plaintiff's daily activities consisted of cooking, cleaning up around the house, preparing her son for school (followed by a nap), grocery shopping, watching television, visiting with family, talking on the telephone, visiting the park, and playing video games with her son. AR 373. She also helps her son with his homework and goes to church. AR 373.

Dr. Torrez observed that Plaintiff's behavior was "cooperative, polite, and engaged." AR 371. Her mental activity was linear, speech was logical, coherent, and concise, and her thought content was appropriate. AR 372. Although her mood was mildly anxious and dysthymic, her intellectual functioning, concentration, abstract thinking, and judgment/insight abilities were normal. AR 372-73.

Dr. Torrez concluded that Plaintiff's symptoms were within the "mild-to-moderate range." AR 374. She also determined that Plaintiff had no limitations in understanding and remembering very short and simple instructions and understanding and remembering detailed instructions. AR

375. Plaintiff was mildly limited in: maintaining attention and concentration; accepting instructions from a supervisor and responding appropriately; and sustaining an ordinary routine without special supervision. AR 375. Plaintiff was "mild-moderately" limited in: completing a normal workday and workweek without interruptions; interacting with co-workers; and dealing with various changes in the work setting. AR 375. Finally, Dr. Torrez concluded that "[t]he likelihood of the claimant emotionally deteriorating in a work environment is fair." AR 375.

The ALJ gave Dr. Torrez's opinion "reduced weight," saying that, among other things, it was inconsistent with the general lack of mental health treatment in the record and the information contained within Dr. Torrez's own report. AR 28.

### ii. P.N. Ligot, M.D.

Dr. Ligot reviewed Plaintiff's records on June 6, 2012. AR 87. Dr. Ligot determined that Plaintiff could lift and carry 25 pounds frequently and 50 pounds occasionally. AR 84. She could stand and/or walk for approximately 6 hours in an 8 hour workday. AR 84 She could also sit for approximately 6 hours in an 8 hour workday. AR 84. She could frequently: climb ramps/stairs; climb ladders/ropes/scaffolds; balance; stoop; kneel; crouch; and crawl. AR 85.

The ALJ gave Dr. Ligot's opinion reduced weight. AR 27.

### iii. Cal VanderPlate, Ph.D.

Dr. VanderPlate reviewed Plaintiff's records on February 9, 2012. AR 70. After his review of the record, Dr. VanderPlate found that Plaintiff was moderately limited in her ability to: maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions; and interact appropriately with the general public. AR 68. Plaintiff was not significantly limited in any other ability and could carry out detailed and complex tasks. AR 69. Despite her anxiety and depression, Plaintiff "has no problems with stress tolerance and adaptive skills, and is able to adequately adjust to a task setting and deal with change." AR 69.

The ALJ gave Dr. VanderPlate some weight, saying that his opinion was in line with the information contained in Dr. Torrez's report (if not the conclusions of that report). AR 28. In addition, he found that Dr. VanderPlate's conclusions were consistent with Plaintiff's level of

daily activities. AR 28.

### B. Legal Standards

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Lester*, 81 F.3d at 830. While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir.2001), except that the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831, *citing Magallanes*, 881 F.2d at 751–55.

### C.  The ALJ's Treatment of Dr. Torrez's Opinion was Appropriate

As a threshold matter, Plaintiff does not articulate how the ALJ actually "rejected" Dr. Torrez's opinion such that the rejection would affect the outcome of his decision. The ALJ did not reject Dr. Torrez's opinion because it imposed too many limitations on Plaintiff. Rather, he found that Dr. Torrez may have *overrated* some of Plaintiff's capabilities because Dr. Torrez concluded that she was capable of performing detailed and complex tasks. Thus, the ALJ actually adopted more restrictive limitations into his RFC finding than Dr. Torrez suggested. Despite this restrictive RFC, Plaintiff was still found capable of performing her past relevant work. As a result, had the ALJ uncritically accepted Dr. Torrez's (less restrictive) conclusions as to the RFC, he still would have found that she was capable of performing her past relevant work. And as a result, Plaintiff would then likely be claiming that the ALJ implicitly rejected Dr. VanderPlate's (more restrictive) conclusions. So any error here with respect to Dr. Torrez is harmless and would not justify remand. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination'"). Nonetheless, Plaintiff has challenged the ALJ's treatment of Dr. Torrez's opinion and the Court will review it accordingly.[5]

---

[5] Plaintiff claims that the ALJ rejected a single sentence in Dr. Torrez's opinion that suggested that there was a "fair" probability of Plaintiff "emotionally deteriorating" in a work environment. Plaintiff then proceeds to argue that "fair" is very close to "poor" in standard ratings of mental wellbeing based on a Wisconsin state agency's definitions. It is unclear why Plaintiff believes that these definitions should be binding on a U.S. District Court in California. In any case, Plaintiff misapplies the rating scale she proposes. In the Wisconsin scheme, the rating scale lays out ratings on a spectrum from "poor" to "excellent" in response to the question: "In general, would you say that your mental health is excellent, very good, good, fair, or poor?" In other words, a response of "poor" would reflect poor mental health and "excellent" would reflect excellent mental health. Dr. Torrez's opinion inverts these ratings by posing the question whether Plaintiff would deteriorate emotionally based on exposure to a workplace environment. If, for example, Dr. Torrez said Plaintiff had an "excellent" probability of deteriorating emotionally in the workplace, that would indicate poor or unstable mental health, rather than excellent mental health. Dr. Torrez's actual conclusion—

Dr. Torrez's ultimate finding that Plaintiff had limitations in multiple areas is contradicted by the findings of Dr. VanderPlate.[6] Consequently, the ALJ needed only provide specific and legitimate reasons supported by substantial evidence to reject any of Dr. Torrez's findings. *Lester*, 81 F.3d at 830-31.

The ALJ gave reduced weight to Dr. Torrez's findings, explaining that:

> Dr. Torrez's opinion is given reduced weight because it is largely inconsistent with the general absence of evidence of specialized mental health treatment in the record, which indicates that the claimant's mental conditions are no more than mild. In addition, Dr. Torrez's opinion is largely inconsistent with the claimant's essentially normal mental status examination conducted on January 9, 2012. Furthermore, Dr. Torrez's opinion is largely inconsistent with the claimant's admitted daily living activities as described above, which indicate considerable mental capacity. Moreover, Dr. Torrez overstates the claimant's ability to perform detailed and complex tasks, and did not adequately consider the effects of the claimant's pain and medication on her concentration ability.

AR 28 (internal citations omitted).

The ALJ thus gave Dr. Torrez's opinion reduced weight because: (1) her own records are inconsistent with the ultimate conclusions she reached; (2) the lack of a mental health treatment history indicates few limitations; and (3) Plaintiff's daily activities are inconsistent with the report's conclusions. These reasons are all specific and legitimate reasons to reject Dr. Torrez's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (conflict between medical opinion and daily activities "may justify rejecting a treating provider's opinion"); *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (upholding rejection of physician's opinion where "ultimate conclusions . . . did not mesh with her objective data or history"); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician opinion where physician's "other recorded observations and opinions" contradicted his ultimate conclusions); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (physician's finding of "marked limitations" legitimately rejected where "no substantial evidence existed demonstrating [plaintiff's] mental impairments prevented him from working").

---

that Plaintiff had a "fair" probability of deteriorating emotionally—is thus not necessarily indicative of poor mental health under Plaintiff's proposed calculus.

[6] Specifically, Drs. Torrez and VanderPlate only agreed with respect to Plaintiff's limitations in maintaining attention and concentration and in completing a normal workday and workweek. Even in those categories, the two differed on the scope of the limitations.

All three are supported by substantial evidence. Dr. Torrez's examination of Plaintiff demonstrates essentially normal findings. Dr. Torrez reported that Plaintiff was dressed appropriately, behaved appropriately, and showed a linear and logical stream of thought. AR 371. She had no suicidal ideation, was properly oriented, and showed a normal ability to concentrate, think abstractly, and make judgments. AR 373. None of these findings support an ultimate conclusion that Plaintiff was disabled by her mental impairments.

There is some scattered evidence in the record indicating at least some mental health treatment by treating physicians. AR 316, 459, 466. What there is not, however, is any indication in the records that Plaintiff's mental health problems precluded her from performing any substantial work activity. Indeed, one of the only references within the record to Plaintiff's depression details a visit to a treating physician in May 2012 in which Plaintiff declined suggested treatment. AR 459.

Finally, Plaintiff appears to enjoy a full range of daily activities that do not support a finding that she was disabled. She cares for her son, prepares him for school, helps him with homework, takes him to the park, and plays video games with him. AR 373. She performs household chores such as cooking and taking out the trash. AR 373. She is able to shop, go to church, visit with family, and talk on the telephone. AR 373.

The ALJ could have reasonably determined that Plaintiff was not disabled based on any of these reasons and did not err in his treatment of Dr. Torrez's opinion.

### D. The ALJ's Evaluation of Plaintiff's Credibility was Appropriate

To evaluate the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that the impairment "could reasonably be expected to cause the *severity* of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id*. (emphasis added). If the claimant meets the first test and there is no evidence of malingering, the

10

ALJ can only reject the claimant's testimony regarding the severity of the symptoms for "specific, clear and convincing reasons" that are supported by substantial evidence. *Id*.

> An ALJ can consider a variety of factors in assessing a claimant's credibility, including:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted). Other factors can include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ can only rely on an inconsistency between a claimant's testimony and the objective medical evidence to reject that testimony where the ALJ specifies which "complaints are contradicted by what clinical observations." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). An ALJ properly discounts credibility if she makes specific credibility findings that are properly supported by the record and sufficiently specific to ensure a reviewing court that she did not "arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

Here, the ALJ concluded that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 26. He questioned, however, "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms." AR 26. The ALJ is thus required to provide "specific, clear and convincing reasons" for finding Plaintiff not credible. *Vasquez*, 572 F.3d at 591.

The ALJ offers a lengthy explanation of his consideration of Plaintiff's testimony. Ultimately, he offered five reasons for finding Plaintiff not credible: (1) Plaintiff's "allegations of debilitating physical symptoms are not well supported by the medical evidence of record"; (2) Plaintiff's treatment "has been essentially routine and conservative in nature"; (3) Plaintiff "has made inconsistent statements regarding matters relevant to the issue of disability"; (4) Plaintiff has "described daily living activities that include independent self-care, performance of some

11

light household chores, and the ability to drive a car"; and (5) Plaintiff's "demeanor while testifying at the hearing was generally unpersuasive."[7] AR 26-27. The Court will consider each of these reasons in turn.

### i. The ALJ's personal observations

An ALJ's personal observations of a Plaintiff's demeanor may form a part of the credibility analysis. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). Such observations, however, cannot "form the sole basis for discrediting a person's testimony." *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007). Moreover, the ALJ's observation in this instance is less detailed than in those cases suggesting that personal observations can form a portion of the credibility analysis—it is not clear from the decision what it was about Plaintiff's demeanor that made her unpersuasive and on which issues she failed to persuade. Thus, while Plaintiff's demeanor can play some role in the credibility analysis, it is not, in this instance, a dispositive one.

### ii. Lack of corroboration with objective evidence

The fact that a Plaintiff's statements are not supported by the objective evidence in the record may constitute a reason to find those statements unpersuasive, although it cannot represent the ***only*** reason. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("an adjudicator may not reject a claimant's subjective complaints based solely on the lack of objective medical evidence to fully corroborate the alleged severity of pain"). When this rationale is relied on, however, the ALJ "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds." *Id.* This means that the ALJ must "identify specifically which of [Plaintiff's] statements she found not credible and why." *Brown-Hunter v. Colvin*, No. 13-15213, 2015 WL 4620123, at *5 (9th Cir. Aug. 4, 2015) (ALJ's statement that "the functional limitations from the claimant's impairments were less serious than she has alleged" insufficiently specific to justify rejection of testimony). Although the ALJ here identified specific medical records that contradicted Plaintiff's "allegations of debilitating physical symptoms," it is not entirely clear which portions of Plaintiff's testimony have been discredited

---

[7] The ALJ also offers a separate paragraph discrediting Plaintiff's testimony because "the record in this case reveals no restrictions recommended by a treating doctor." AR 27. This rationale for rejecting Plaintiff's testimony falls within the same category as the "routine and conservative treatment" reasoning. AR 26.

(or even which of her symptoms). Thus, this rationale is not sufficient to discredit Plaintiff's testimony.

### iii. Conservative course of treatment

A record of essentially routine and conservative treatment can constitute a specific, clear, and convincing reason to "discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), *quoting Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (affirming ALJ decision where ALJ noted that treating physician "prescribed only 'conservative treatment' . . . suggesting a lower level of both pain and functional limitation"). The ALJ's finding that Plaintiff's treatment, "which consists of medications, has been essentially routine and conservative in nature" is also supported by substantial evidence in the record. AR 26. The ALJ is correct that Plaintiff's treatment does not appear to have progressed beyond medication.[8] AR 287, 318, 341, 369. There is little evidence that her treatment went any further. In one instance, for example, Plaintiff was referred to physical therapy, but the therapy was discontinued after three sessions by Plaintiff. AR 271 ("Has not made much progress with PT TX due to short number of visits. Pain level was still reported at 9-10/10 even though her behavior did not demonstrate that high of pain level. PT was always calm and did not appear to be in much pain at all"). Similarly, the treatment for Plaintiff's irritable bowel syndrome consisted simply of a "high fiber diet." AR 322.

In this instance, the ALJ also identified specifically which testimony he found not credible because of the conservative course of treatment: Plaintiff's claims about "her generalized body ache, chronic back pain, and pain in the bilateral upper and lower extremities." AR 26. These findings are sufficiently specific and it was reasonable, after a review of Plaintiff's records, for the ALJ to find the Plaintiff's testimony not credible on these grounds.

### iv. Internal inconsistencies within Plaintiff's testimony

A pattern of inconsistencies in Plaintiff's testimony can constitute a reason to find her not

---

[8] Plaintiff asserts that one of Plaintiff's medications, Tramadol, is a narcotic medication, contradicting the ALJ's statement that "the claimant has not taken any narcotic based pain relieving medications." AR 26. While this may be true, the ALJ's primary finding, that "[t]he lack of more aggressive treatment or surgical intervention suggest that those symptoms were not as severe as she alleged," may still function as a reason not to credit Plaintiff's testimony.

13

credible. *Tommasetti*, 533 F.3d at 1039 ("An ALJ may consider many factors in weighing a social security claimant's credibility, including . . . prior inconsistent statements"). The ALJ found that Plaintiff's testimony about her particular daily activities was contradicted by statements she made to Dr. Torrez in her consultative examination. Specifically, Plaintiff told the ALJ that she did not perform any household chores. AR 49 ("**Q.** And are you able to do housework at home? **A.** No housework. I can't really clean. I can't take care of my dog. Luckily my son's 10, because he pretty much can take care of himself.") In her examination with Dr. Torrez, however, Plaintiff explained that she "cooks, takes out the trash, and cleans up after herself." AR 373. She also "gets her son ready for school and sends him off to school with her mother, or she goes with her to drop him off." AR 373. The ALJ also noted that Plaintiff testified that she never left the house or went shopping. AR 50 ("**Q.** Right. How often do you leave the house? **A.** Never. I'm always home, because I can't really do too much. I can't really walk anywhere, so if I need shopping done, my roommate will do the shopping.") But she told Dr. Torrez that "[s]he goes to the grocery store, goes shopping . . . [and] go[es] to the park." AR 373. The ALJ's findings here were supported by substantial evidence—Plaintiff did, in fact, make several contradictory statements—and were sufficiently specific, clear, and convincing to cast doubt on her credibility.

Plaintiff asserts that, despite her inconsistencies, it was error for the ALJ to find her testimony not credible because the ALJ omitted a fact about Dr. Torrez's opinion. Specifically, Plaintiff argues that, even though she is able to take her son to school, she must take a nap afterwards. (Plaintiff's Opening Brief 15:5-7, ECF No. 18.) The implied argument is that Plaintiff is thus still disabled, even if her medical problems do not impair her to the extent she claimed at the hearing. Plaintiff then extends this argument by referring to the opinion in *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004) and claiming that the ALJ is selectively crediting portions of her testimony (*e.g.,* accepting that Plaintiff can prepare her son for school) while discrediting others.

But Plaintiff misreads the ALJ's reasoning. In this instance, the ALJ is not pointing out inconsistent statements in Plaintiff's testimony so that he can determine which statement to accept or reject. Rather, the inconsistencies were examined to evaluate the persuasiveness of the

14

Plaintiff's subjective complaints. AR 27 ("These discrepancies diminish the persuasiveness of the claimant's subjective complaints and alleged functional limitations"). The ALJ reviewed the statements for their impeachment value, not for the truth of the matter they assert.[9] In other words, the question is not whether or not Plaintiff takes her son to school every day, the question is whether or not Plaintiff *made inconsistent statements* about taking her son to school every day. If she made inconsistent statements about her daily activities, it is reasonable for the ALJ to infer that her testimony is not credible with respect to her symptoms. The internal inconsistencies within Plaintiff's testimony thus constitute a specific, clear, and convincing reason to find her not credible.

### v.  *Plaintiff's daily activities*

A Plaintiff's daily activities can be a valid reason for an ALJ to doubt a Plaintiff's subjective testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (evidence that plaintiff "exercised and undertook several projects after he retired" suggested that his "later claims about the severity of his limitations were exaggerated"). Plaintiff is correct that "many home activities are not easily transferable to what may be the more grueling environment of the workplace." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). The mere fact that Plaintiff takes a nap after taking her son to school does not suggest a "totally debilitating impairment," particularly given the range of other activities she engages in over the course of the day. Taken in conjunction with the ALJ's personal observations of Plaintiff's demeanor, the conservative course of her treatment, and the internal inconsistencies within Plaintiff's testimony, the ALJ provided specific, clear, and convincing reasons supported by substantial evidence to disbelieve Plaintiff's allegations of her symptoms.

---

[9] The ALJ did, however, make specific factual findings about which statements to credit later on in the decision when he examined whether Plaintiff's testimony was inconsistent with her daily activities. Plaintiff's argument, however, has no force when applied to the question whether Plaintiff's testimony was inconsistent *with her other statements in the record.*

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision that the Plaintiff is not significantly limited in her ability to perform basic work activities is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant, Carolyn W. Colvin, and Commissioner of Social Security and against Plaintiff, Liza Noriega.

IT IS SO ORDERED.

Dated:   **August 13, 2015**                              **/s/ Gary S. Austin**
                                                            UNITED STATES MAGISTRATE JUDGE